# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| John Guerriero, individually and on behalf of all others similarly situated, | Case No. 7:21-cv-02618 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Sony Electronics Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.　　Sony Electronics Inc. ("defendant") manufactures, markets and sells the a7iii camera ("Product") described as "the vanguard of the mirrorless camera movement because they're the most accessible full-frame system[s] on the market."[1]



## I.　Mirrorless Cameras

2.　　Before digital electronic sensors, all cameras used film to capture images.

---

[1] Stefan Etienne, Sony A7 III and A7R III Review: Mirrorless Magic, The Verge, March 30, 2018.

3.      Cameras contained an inside mirror to reflect an image into an optical viewfinder.

4.      The viewfinder shows the area that will be included in a photograph.[2]



5.      Once the shutter opens, light passes through the lens.



6.      The mirror then moves out of the path of the light hitting the film when the shutter button is released, creating the image.

7.      The shutter is the component that retracts for a specific period of time, allowing light to pass through the lens, hitting a photographic film or a light-sensitive sensor to expose a scene and permanently register it.

8.      When the scene is registered, that shutter goes back down.

---

[2] Britannica, The Editors of Encyclopedia. "Viewfinder". Encyclopedia Britannica, 19 Sep. 2019.

9.     Camera shutters are measured by actuations, which is the number of pictures taken with the camera.

10.     This is a relevant metric because for each picture, the shutter flaps open and closed for an exposure.

11.     A mirrorless camera has all the attributes of previous generations of cameras but without a mirror.[3]



12.     The absence of a mirror increases the camera's speed and allows it to be smaller and lighter than a traditional digital camera ("DSLR" or digital single-lens reflex camera).

13.     The a7iii is smaller, lighter, and more durable than its DSLR counterpart, which contributes to its higher cost – approximately $2,000.00.

14.     Unfortunately for many purchasers of the a7iii, mechanical problems with the shutter have rendered the cameras unusable provided they do not pay over $500 for repair to an authorized service center.

15.     Mirrorless cameras are preferred by many professional photographers because they are quieter, which provides less distractions when photographing events like weddings.[4]

---

[3] Mirrorless Interchangeable-lens Camera or "MILC"; Canon New Zealand, Mirrorless or DSLR Cameras: Which is Right for You?.
[4] Vincent Tabora, DSLR vs. Mirrorless, Medium.com, Oct 14, 2019.

II.  The a7iii's Shutter Problem

16.    The shutter life expectancy on the a7iii is 200,000 actuations.

17.    However, numerous users report shutter failures far below 200,000 but between 10,000 and 50,000 for most of the users who experienced this.[5]

18.    While the a7iii is generally sold with a one-year warranty, shutter failure occurs randomly, often outside of the warranty period.

19.    The result is that purchasers must pay approximately $500-$650 for repair and replacement of the shutter mechanism.

20.    The shutter failure manifests in a consistent way.

21.    Prior to shutter failure, users report hearing an atypical shutter sound, followed by the screen turning black and displaying the following message: "Camera Error. Turn off then on."



22.    However, following these instructions often will not solve the problem.

23.    Users who experience the shutter failure have resorted to removing and reinserting the camera's battery, but this is also ineffective.

---

[5] We want Sony A7III to be recalled for Shutter replacement, Change.org petition, 2019.

24.     When a user removes the lens, the shutter is closed and stuck.

 

25.     In most instances, the shutter has become detached, as shown through the numerous a7iii users who shared pictures of their broken shutters on the internet.

 

26.     Several explanations have been advanced for why the a7iii shutters fail relatively frequently and before the expected number of actuations.

27.     These include the observation that the shutter blade catches on the front edge as it moves down in taking a picture.

28.     This is because the blades are positioned farther forward, so they "catch" and fail to

fully clear.

29.    Moreover, the front curtain shutter material is of limited strength, causing it to break.

30.    Additionally, the shutter is unusually susceptible to disruption by small particles, even dust, which can cause the blades out of alignment. from

31.    Many users, out of caution, have resorted to using the camera with the electronic front curtain shutter ("EFCS") off, which may decrease the chance of a shutter malfunction.

32.    When the EFCS is on, it "shortens the time lag between shutter releases and helps reduce shutter noise when taking pictures."[6]

33.    However, the EFCS is one of the main reasons for purchasing the a7iii and having to refrain from using it diminishes the camera's utility and value.

34.    For users whose shutters do not fail completely, they nonetheless experience abnormal banding that is evident only when using the mechanical shutter.

35.    The cause is the failure of the rear curtain to clear properly.

36.    Though users and do-it-yourself repair enthusiasts have offered ways to unbind the shutter, these can cause damage to the shutter.

37.    Additionally, the problem is likely to reoccur, and the user will have any warranty claim denied for having caused "physical damage" in attempting to fix the shutter failure.

38.    In fact, Sony has denied warranty coverage to numerous a7iii users on these grounds.

39.    Sony has also denied coverage to those who experienced shutter failure when their claims were submitted outside of the limited warranty period.

40.    Sony has been aware of the shutter failure on the a7iii since shortly after its release around 2017.

---

[6] What Is the Electronic Front Curtain Shutter Function?, Sony.com, March 23, 2021.

41.    Sony is aware of the percentage of this model which experience premature shutter failure but has declined to act such as issuing a recall or covering the faulty shutters.

Parties

42.    Plaintiff John Guerriero is a citizen of Yonkers, Westchester County, New York.

43.    Defendant Sony Electronics Inc. is a Delaware corporation with a principal place of business in San Diego, California.

44.    Defendant is one of the premier manufacturers of electronics in the world, from stereos to televisions to videogame systems.

45.    Plaintiff John Guerriero purchased the Product from Amazon.com in or around 2019.

46.    Plaintiff and/or class members experienced the shutter failures and contacted and/or attempted to contact Defendant to remedy this but were not successful because of Defendant's conduct.

47.    The claims of Plaintiff and/or class members accrued when they suffered the injury of the shutter failures and/or the diminution of value caused by the latent defect.

48.    Defendant is estopped from asserting a statute of limitations defense.

49.    The claims of Plaintiff and/or class members are subject to equitable tolling and equitable estoppel.

50.    Defendant's fraudulent concealment caused Plaintiff and/or class members to lack knowledge of their causes of action.

51.    Plaintiff and/or class members were delayed in filing this action due to Defendant's wrongful conduct.

52.    Despite due diligence, Plaintiff and/or class members were unable to discover facts that would allow them to bring their claims sooner.

53.    Defendant's actions of suggesting remedial measures other than shutter repair and

replacement, induced Plaintiff and/or class members to refrain from commencing the action sooner.

54.    Plaintiff and/or class members did not have enough information to commence the action sooner because Defendant failed to disclose that the cause of the issue was due to the lower quality materials used in the shutter and assured them there were no problems with the shutters, when it knew this was not true.

55.    Defendant's post-sale handling of the warranty claims and inquiries of Plaintiff and/or class members were deceptive and misleading because Defendant and its customer service representatives told Plaintiff and/or class members that the issue could be fixed by resetting their cameras, they damaged the cameras and/or there were no reports of similar issues.

56.    Plaintiff and class members will purchase the Product again if they are assured it would not suffer from premature shutter failures.

<u>Jurisdiction and Venue</u>

57.    Jurisdiction is proper pursuant to the Class Action Fairness Act of 2005 ("CAFA") as the amount in controversy is at least $5 million and there is minimal diversity. 28 U.S.C. § 1332(d)(2).

58.    Plaintiff John Guerriero is a citizen of New York.

59.    Defendant Sony Electronics Inc. is a Delaware corporation with a principal place of business in San Diego California.

60.    Diversity exists because plaintiff John Guerriero and defendant are citizens of different states.

61.    Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of Plaintiff to purchase

the Product and the misleading representations and/or their recognition as such.

62.   This court has personal jurisdiction over Defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Class Allegations

63.   The class will consist of all citizens of New York who purchased the a7iii cameras.

64.   Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

65.   Common questions of law or fact predominate and include whether defendant's practices were misleading with respect to the Product.

66.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same representations.

67.   Plaintiff is an adequate representative because his interests do not conflict with other members.

68.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

69.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

70.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

71.   Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statutes)

72.   Plaintiff incorporates by reference all preceding paragraphs.

73.   Plaintiff and class members desired to purchase a camera which did not suffer from

premature shutter failure, which would not be remedied by Defendant even though it was obligated to do so.

74.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

75.    Defendant intended that plaintiff and class members rely on representations it would function capably through 200,000 actuations, even though it did not.

76.    Plaintiff and class members were misled and/or deceived.

77.    Plaintiff relied on the statements, omissions and representations of Defendant, and Defendant knew or should have known the falsity of same.

78.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

79.    Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known this was false or misleading.

80.    This duty is based on Defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

81.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant, a well-known and respected brand or entity in this sector.

82.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

83.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

84.    The Product was manufactured, represented and sold by Defendant or at its express directions and instructions, and warranted to Plaintiff and class members that it possessed attributes, such as durability through the expected actuations, which it did not.

85.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

86.    This duty is based, in part, on Defendant's position as one of the most recognized companies in the world in this sector.

87.    Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers and their employees.

88.    Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product and issues described here.

89.    The Product did not conform to its affirmations of fact and promises due to Defendant's actions and were not merchantable, especially because the a7iii is used by professional photographers who cannot afford to suffer a shutter failure when they are shooting an event.

90.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

91.    Defendant misrepresented the attributes of the Product and knew the statements and omissions were false and misleading to consumers.

92.    Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

Unjust Enrichment

93.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   March 26, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409

Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

7:21-cv-02618
United States District Court
Southern District of New York

John Guerriero, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Sony Electronics Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
   Tel: (516) 268-7080
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  March 26, 2021

/s/ Spencer Sheehan
Spencer Sheehan
